















JPP   9/4/03   10:39

3:03-CV-01765   GORDON V. STANDARD INS CO

*1*

*NTCREM.*

1   WARREN H. NELSON, JR.  #104744
    A PROFESSIONAL CORPORATION
2   6343 El Cajon Boulevard, # 165
    San Diego, CA 92115
3   Telephone:  (619) 269 4212
    Facsimile:  (619) 501 7948
4
    Attorney for Defendant
5   STANDARD INSURANCE COMPANY
6
7



8                   UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                                        03 CV 1765 H    LSP

11  JAY GORDON, an individual, and )   Case No.:
    SHEILA GORDON, an individual,  )
12                                 )   DEFENDANT STANDARD INSURANCE
                                   )   COMPANY'S NOTICE OF REMOVAL
13                                 )
              Plaintiffs,          )
14                                 )
         vs.                       )
15                                 )
    STANDARD INSURANCE COMPANY, a  )
16  Corporation, BARNEY & BARNEY, a)
    Corporation, and DOES 1 through)
17  10, inclusive,                 )
                                   )
18            Defendants.          )
                                   )
19                                 )
                                   )
20  _____)

21      PLEASE TAKE NOTICE that defendant Standard Insurance Company

22  ("Standard") hereby removes to this court the following action

23  on file in the California Superior Court:

24      1.   On July 25, 2003, the action, Jay Gordon, an

25  individual, and Sheila Gordon, an individual, plaintiffs, vs.

26  Standard Insurance Company, a Corporation, Barney & Barney, a

27  Corporation, and DOES 1 through 10, inclusive, defendants, was

28  filed in the Superior Court of California, County of San Diego,



DEF STANDARD'S NOTICE OF REMOVAL - 1

and assigned case No. GIC814967.  A true and correct copy of the complaint in that action and the documents served therewith are attached hereto as Exhibit A (the "complaint").

2.    Defendant Standard was first served with a copy of the summons, complaint and related documents on August 5, 2003.  A true and correct copy of the summons served on Standard is attached hereto as Exhibit B.  Defendant Barney & Barney was first served with the summons and complaint in this action on August 12, 2003.  A true and correct copy of the summons served on defendant Barney & Barney is attached hereto as Exhibit C.

3.    Standard alleges that this Court has original jurisdiction over this civil matter pursuant to 28 U.S.C. section 1331, and that this action is one that may be removed to this Court by Standard pursuant to the provisions of 28 U.S.C. section 1441(b) in that plaintiffs' only proper claims arise under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1003(b), and all other claims for relief or causes of action of the complaint are preempted by ERISA.

4.    Alternatively, the claims of plaintiff Sheila Gordon, related to the denial of her claim for disability benefits are, as a matter of law, unrelated to the other claims for relief or causes of action of the complaint.  The claim of wrongdoing of plaintiff Sheila Gordon, in connection with her disability claim on Standard's plan or policy, is a claim for relief that is a Federal claim pursuant to ERISA.  This claim is separate and independent from every other claim for relief or cause of action in the complaint, and within the jurisdiction conferred by 28

1   U.S.C. section 1331, and is therefore removable pursuant to 28

2   U.S.C. section 1441(c).  The Court may and should determine all

3   issues in this entire action that is being removed to this

4   Court.

5        5.   Standard files herewith as Exhibit D a true and

6   correct copy of its general denial and affirmative defenses that

7   was served by mail on all parties and filed in the Superior

8   Court of California, County of Los Angeles, prior to removal of

9   this action.

10       6.   Barney & Barney has advised that it will join in this

11  removal and will file its joinder in this removal.

12  Dated:  September *3*, 2003

13                                 _____
                                   WARREN H. NELSON, JR.
14                                 A PROFESSIONAL CORPORATION
                                   6343 El Cajon Boulevard, # 165
15                                 San Diego, CA 92115

16                                 Attorney for Defendant
                                   STANDARD INSURANCE COMPANY
17

18

19

20

21

22

23

24

25

26

27

28

1   **TABLE OF CONTENTS**

2   **EXHBITS TO NOTICE OF REMOVAL**

3

4

5   GORDON, ET AL. v. STANDARD INSURANCE COMPANY, ET AL.,

6   U.S.D.C., Southern District of California, Case No. not yet

7   assigned, originally filed under same name as action No,

8   GIC814967, Superior Court of California, County of San Diego

9

10  EXHIBIT         PAGE (S)

11

12  A               1 - 32

13

14  B               33

15

16  C               34

17

18  D               35 - 39

19

20

21

22

23

24

25

26

27

28

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

STANDARD INSURANCE COMPANY, a Corporation,
BARNEY & BARNEY, a Corporation; and DOES 1 through 10, inclusive

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*

JAY GORDON, an individual and SHEILA GORDON, an individual

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court. | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.* |
| A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case. | *Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.* |
| If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court. | *Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.* |
| There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

The name and address of the court is: *(El nombre y dirección de la corte es)*

San Diego Superior Court
330 West Broadway
San Diego, CA 92101

CASE NUMBER: *(Número del Caso)*
GIC814967

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
John W. Tower, Esq., SBN 106425
9747 Business Park Avenue, Suite 201 San Diego, CA 92131      (858) 635-5570 / Fax (858) 635-5771

DATE: JUL 2 5 2003
*(Fecha)*

Clerk, by _____ , Deputy
*(Actuario)* L. Pettavino *(Delegado)*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [X] on behalf of *(specify)*: Standard Insurance Company, a Corporation

under: [X] CCP 416.10 (corporation)           [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (individual)
       [ ] other:

4. [ ] by personal delivery on *(date)*:

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) (Rev. January 1, 1984)

*(See reverse for Proof of Service)*
**SUMMONS**

JURISEARCH
www.jurisearch.com

CCP 412.20

Ex. A P. 1

1   JOHN W. TOWER, ESQ. #106425
    9747 Business Park Avenue, Suite 201
2   San Diego, CA  92131
    (858) 635-5570 / (858) 635-5771 Fax
3
    Attorneys for Plaintiffs
4   Jay Gordon and Sheila Gordon

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN DIEGO

10  JAY GORDON, an individual and SHEILA      )   Case No.:  GIC 814967
    GORDON, an individual,                     )
11                                             )   COMPLAINT FOR DAMAGES FOR
                   Plaintiffs,                 )   VIOLATION OF ERISA
12                                             )   [29 U.S.C. §1132], CONVERSION,
         vs.                                   )   DECLARATORY RELIEF, REFORMATION,
13                                             )   BROKER NEGLIGENCE AND JURY
    STANDARD INSURANCE COMPANY, a              )   DEMAND
14  Corporation, BARNEY & BARNEY, a Corporation; )
    and DOES 1 through 10, inclusive,          )
15                                             )
                   Defendants.                 )
16  _____)

17       Plaintiffs certify that venue is proper in San Diego County as to all defendants because this is the

18  County in which the obligations of the defendants under the subject insurance policy were to be performed,

19  where the contract was breached and where the injuries and damages occurred.

20       Plaintiffs allege as and for their causes of action as follows:

21                           GENERAL ALLEGATIONS

22       1.    Plaintiffs are residents of the County of San Diego, State of California and were at all times

23  herein mentioned covered by a long term disability insurance policy which plaintiffs are informed and believe

24  and thereon allege was provided, sponsored, supplied, underwritten, administered and/or implemented by

25  defendants STANDARD INSURANCE COMPANY and/or DOES 1 – 5.

26       2.    Plaintiffs are informed and believe and thereon allege that defendant STANDARD

27  INSURANCE COMPANY  (hereinafter "STANDARD") is a corporation authorized to do and doing

28  insurance business in the County of San Diego, State of California.

                                   - 1 -

Ex. 8 P. 2

3.      Plaintiffs are informed and believe and thereon allege that defendant BARNEY & BARNEY is a corporation authorized to do and doing insurance business in the County of San Diego, State of California.

4.      Plaintiffs are informed and believe and thereon allege that defendants DOES 1 through 10 are somehow related to and/or controlled by the named defendants and are related entities that were somehow involved in the issuing of plaintiffs' policy and/or the handling of plaintiffs' claim described herein. The true names and capacities of the defendants sued herein under Section 474 of the Code of Civil Procedure as DOES 1 through 10 are unknown to plaintiffs who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the events herein referred to and caused the damages hereinafter alleged.

5.      Plaintiffs are informed and believe and thereon allege that each defendant is, and was at all times herein mentioned acting as the agent and/or employee of each of the remaining defendants and at all times acted within the scope and authority of said agency and/or employment.

6.      Plaintiffs through defendants BARNEY & BARNEY and/or DOES 6 – 10 purchased a long term disability insurance policy, Policy No. 905893, that plaintiffs are informed and believe and thereon allege was and is issued, underwritten and administered by defendants STANDARD and/or DOES 1 –5 and/or said defendants' predecessor(s)/ assignor(s) who wrote the plan, are in possession of same and are familiar with its terms and conditions. Plaintiffs are informed and believe and thereon allege (based on defendants' representations) that a true and correct copy of said policy is attached hereto as Exhibit "A", and incorporated herein by reference as if set forth in full at this place.

7.      Plaintiffs have performed all conditions, covenants and promises required of them to be performed in accordance with the terms and conditions of the plan policy referred to herein above (including but not limited to the payment of premiums) except, if applicable, those that have been excused and/or waived by defendants.

8.      While the subject plan policy was in effect, plaintiff SHEILA GORDON became disabled thereby entitling her to disability benefits under the subject policy. Plaintiff SHEILA GORDON submitted a claim in accordance with the provisions of the policy.

///

- 2 -

Ex. A P. 3

## FIRST CAUSE OF ACTION

### (Violation of ERISA (29 U.S.C. Section 1132) – Failure to Honor Plaintiff Sheila Gordon's Disability Claim – Against Defendants Standard and Does 1 – 5)

9.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 8, inclusive, as if set forth in full at this place.

10.    Within the past two years, at San Diego, California, the defendants breached their contractual and/or fiduciary obligations under the subject plan and violated the provisions of 29 U.S.C. Section 1132 by, way of example and without limitation, failing to honor plaintiff SHEILA GORDON's covered disability claim and/or claiming that she was not an insured under the subject policy.

11.    As a direct and proximate result of the defendant's breach of contract and violation 29 U.S.C. Section 1132, plaintiff SHEILA GORDON has suffered and will continue to suffer damages including loss of policy benefits under the health plan which plaintiff is informed and believes and thereon alleges is in excess of $100,000.00 together with interest thereon at the legal rate, which sum will be subject to proof at the time of trial.

12.    Pursuant to 29 U.S.C. Section 1132(g) plaintiffs hereby request attorney's fees and costs in connection with recovering benefits due and owing from the defendants. Furthermore, plaintiffs demands a trial by jury as to all issues herein giving rise to such a right.

## SECOND CAUSE OF ACTION

### (Violation of ERISA (29 U.S.C. Section 1132) – Failure to Refund Premiums To Plaintiffs Jay Gordon and Sheila Gordon – Against Defendants Standard and Does 1 – 5)

13.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 12, inclusive, as if set forth in full at this place.

14.    Within the past two years, at San Diego, California, the defendants breached their contractual and/or fiduciary obligations under the subject plan and violated the provisions of 29 U.S.C. Section 1132 by failing to tender a refund of premiums paid by plaintiff JAY GORDON at the time defendants took the position that plaintiff SHEILA GORDON did not qualify as an insured under the subject plan. Plaintiffs assert this cause of action in the alternative in as much as plaintiffs are informed and believe and thereon

- 3 -

Ex. A P. 4

1  allege that plaintiff SHEILA GORDON is an insured member under the disability plan issued by defendants.

2  However, when defendants took the position that SHEILA GORDON was not insured, by definition, JAY

3  GORDON could not be insured as the plan required at least two insured employees and plaintiffs were the

4  only employees under the plan. Therefore, the defendants' failure to refund plaintiff JAY GORDON's

5  premiums (together with interest thereon) is a breach of their fiduciary duty and a breach of the terms of the

6  plan. Additionally, plaintiffs are informed and believe and thereon allege that defendants initially only made

7  a partial refund of plaintiff SHEILA GORDON's premium and then later tendered a refund without any

8  interest thereon. Moreover, defendants applied a portion of the refund of SHEILA GORDON's premium to

9  payments on behalf of JAY GORDON at a time where they had taken a position that SHEILA GORDON was

10  not an insured member, and therefore, there could be no plan providing insurance coverage to plaintiff JAY

11  GORDON.

12  ### THIRD CAUSE OF ACTION

13  ### (Conversion as Against Defendants Standard and Does 1 – 5)

14      15.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in

15  paragraphs 1 through 14, inclusive, as if set forth in full at this place.

16      16.    At the time defendants made their determination that SHEILA GORDON was not an insured

17  under the policy, there could be no policy for JAY GORDON or SHEILA GORDON and defendants were

18  obligated to refund any and all premiums paid by plaintiffs. The defendants have not refunded any of plaintiff

19  JAY GORDON's premiums and have only tendered a refund of SHEILA GORDON's premiums after

20  initially making a partial refund and applying part of that refund to a payment for premiums for JAY

21  GORDON for a policy that, in said defendants' opinion, could not exist.

22      17.    The defendants' conduct (as alleged above) in not returning the monies to plaintiffs that were

23  due and owing them, but rather holding on to the monies for the use and benefit of the defendants was

24  wrongful and constituted a conversion of plaintiffs' monies.

25      18.    The aforementioned conduct of the defendants was done intentionally with a conscious

26  disregard of the rights of plaintiffs and constitutes malice, fraud and/or oppression under *Civil Code* Section

27  3294 thereby entitling plaintiffs to punitive and exemplary damages in an amount sufficient to punish and

28  deter defendants.

- 4 -

Ex. A P. 5

## FOURTH CAUSE OF ACTION

### (Declaratory Relief – Against Defendants Standard and Does 1 – 5)

19.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 17 inclusive, as if set forth in full at this place.

20.     An actual controversy has arisen between plaintiffs and defendants STANDARD and DOES 1 – 5 in that plaintiffs contend that plaintiff SHEILA GORDON is an insured under the applicable disability insurance policy and is thereby entitled to policy benefits whereas said defendants contend that SHEILA GORDON is not an insured under the plan.

21.     Plaintiffs desire a judicial declaration of the rights and duties of the parties hereto with respect to the contentions asserted in the First and Second Causes of Action, including a determination of plaintiff SHEILA GORDON's status as an insured under the plan and/or entitlement to policy benefits.

## FIFTH CAUSE OF ACTION

### (Reformation – Against Defendants Standard and Does 1 – 5)

22.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 17 and 20 - 21, inclusive, as if set forth in full at this place.

23.     At all relevant times, plaintiffs negotiated, by and through defendants BARNEY & BARNEY and DOES 6 - 10, for the purchase of disability insurance coverage with defendants STANDARD and DOES 1 - 5.

24.     At all relevant times, plaintiffs expressly notified the defendants that they were seeking disability insurance coverage for both plaintiffs JAY GORDON and SHEILA GORDON.

25.     Plaintiffs accepted the defendants' insurance policy provided to plaintiffs by defendant BARNEY & BARNEY with the understanding that both plaintiffs were insured.  The premiums charged by defendants STANDARD and DOES 1 - 5 for the policy were based on coverage for both plaintiffs.

///

///

///

///

- 5 -

Ex. A P. 6

26.     In the event this court finds that plaintiff SHEILA GORDON was not an insured under the policy and/or that her claim is not covered, as the policy is issued, then plaintiffs are entitled to and hereby seek reformation of said insurance policy to include coverage for SHEILA GORDON on the basis of mutual mistake of fact, unilateral mistake of fact knowingly taking advantage of by defendants STANDARD and DOES 1 - 5 and/or fraud in the negotiation of and/or premiums charged for the subject policy.

27.     The failure of plaintiff SHEILA GORDON to qualify as an insured, if applicable, resulted from a mutual mistake or unilateral mistake and/or fraud that has resulted in plaintiffs paying premiums for years for a policy, which, according to defendant STANDARD's determination, could not provide any disability coverage for either plaintiff since plaintiff SHEILA GORDON was not, in the opinion of defendant STANDARD, an insured under the policy. Plaintiffs claim that plaintiff SHEILA GORDON is an insured under the policy but allege in the alternative that under defendants' position she would have been had the policy been properly issued.

## SIXTH CAUSE OF ACTION

### (Negligence by Insurance by Professional – Against Defendants Barney & Barney and Does 6 - 10)

28.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 17 and 19 through 27, inclusive, as if set forth in full at this place.

29.     Defendants BANEY & BARNEY and DOES 6 - 10 do business as insurance brokers and at all times mentioned herein acted as the insurance brokers for plaintiffs. As such, defendants BARNEY & BARNEY and DOES 6 – 10 had special and superior knowledge and information to plaintiffs regarding insurance related matters and had a special relationship with plaintiffs.

30.     Said defendants knew that plaintiffs relied on them as insurance specialists to make sure that plaintiffs had full and proper coverages and were both covered in the event of any disability. Accordingly, said defendants owed a duty to plaintiffs to carefully review insurance coverages and/or terms and definitions of disability insurance policies to make sure that plaintiffs obtained appropriate coverages for each of them.

31.     Said defendants breached the above mentioned duties by procuring an insurance policy for the plaintiffs which does not, according to the position taken by defendant STANDARD and/or DOES 1 – 5, include plaintiff SHEILA GORDON as an insured.

///

- 6 -



32.    As a direct and proximate result of the above stated negligence, plaintiffs have sustained damages as alleged herein above including but not limited to, monthly payments for disability benefits to plaintiff SHEILA GORDON, together with interest at the legal rate.

WHEREFORE, plaintiffs pray for judgment against the defendants as follows:

1.    For policy benefits under the plan according to proof at the time of trial.

2.    For prejudgment interest on contractual benefits wrongfully withheld.

3.    For general and compensatory damages according to proof including, but not limited to, policy benefits, return of premiums paid and/or loss of ability to procure appropriate disability insurance for plaintiff SHEILA GORDON.

4.    As to the Third Cause of Action only, for punitive and exemplary damages against defendants STANDARD and DOES 1 –5 in an amount sufficient to punish and deter said defendants.

5.    As to the Fifth Cause of Action only, that the subject long-term disability insurance policy be reformed to reflect the true intent of the parties to provide that plaintiff SHEILA GORDON is a covered insured under said policy.

6.    For reasonable expenses incurred, including reasonable attorney's fees and other costs related to the collection by plaintiff of policy benefits wrongfully withheld by the defendants.

7.    For costs of suit incurred herein and for such other and further relief as the court may deem just and proper.

Dated: July 24, 2003            LAW OFFICE OF JOHN W. TOWER

By:    _____
       JOHN W. TOWER
       Attorney for Plaintiffs
       Jay Gordon and Sheila Gordon

///
///
///
///
///

- 7 -

Complaint for Damages – Gordon, et al. vs. Standard Insurance Co., et al.

Ex. A P. 8

# EXHIBIT A

Ex. __A__ P. __9__

SI-24-682p (3-95)
SST is a registered service mark of Standard Insurance Company

Issued By:

STANDARD INSURANCE COMPANY

*People. Not just policies.*™

GROUP LONG TERM DISABILITY INSURANCE

**Employee**
**LONG TERM DISABILITY**
**PLAN**

POLICYOWNER SAMPLE

STANDARD SELECT TRUST

Ex. A P. 10

STANDARD INSURANCE COMPANY

## GROUP INSURANCE CERTIFICATE AND SUMMARY PLAN DESCRIPTION

STANDARD INSURANCE COMPANY certifies that you will be insured for the coverages shown on your Certificate Label for the duration and in the manner provided in the master group policy issued to the First Interstate Bank of Oregon, N.A., Trustee of the Standard Select Trust. Possession of this Certificate does not necessarily mean you are insured for the coverages described below.

*Ronald E. Finger*

President

*Gregory D. Ness*

Secretary

GC 488 MET

Ex. A P. 11

# GROUP INSURANCE CERTIFICATE and SUMMARY PLAN DESCRIPTION (Continued)

## IMPORTANT: PLEASE READ THIS

The effective date of your coverage(s) as shown on your Certificate Label is subject to the following rules:

You are insured only if you have met all the requirements in Section Three, Part 1, BECOMING INSURED. You will remain insured only until your insurance ends, as explained in Section Three, Part 2, WHEN INSURANCE ENDS.

The group policy which governs the insurance coverages described below has been issued by Standard to the Trustee of the Standard Select Trust.

Your Employer has elected to participate under this group policy and to offer the specific coverages shown on your Certificate Label. If your coverages are changed by an amendment to the group policy or by a change in your Employer's selection of plan benefits, Standard will provide your Employer with a revised Certificate or other notice to be given to you.

PLEASE READ THIS CERTIFICATE CAREFULLY. This Certificate has a Table of Contents and an index of Defined Terms to help you find specific provisions and definitions.

ERISA REQUIREMENTS: ERISA means the Employee Retirement Income Security Act of 1974. Under ERISA, the Plan Administrator gives you this Summary Plan Description of the employee benefits insured under the group policy. General plan information and a statement of your rights as a plan participant are found at the end of this document.

## TABLE OF CONTENTS

### SECTION ONE
#### SCHEDULE OF INSURANCE AND GENERAL DEFINITIONS

PART 1. SCHEDULE OF INSURANCE .......................... 1
PART 2. GENERAL DEFINITIONS ............................. 3

### SECTION TWO
#### BENEFIT PROVISIONS

LONG TERM DISABILITY INSURANCE ..................... 5

### SECTION THREE
#### GENERAL PROVISIONS

PART 1. BECOMING INSURED ............................... 20
PART 2. WHEN INSURANCE ENDS .......................... 24
PART 3. BECOMING INSURED AGAIN AFTER INSURANCE
ENDS ....................................................... 25
PART 4. CLAIMS PROVISIONS AND PROCEDURES ....... 26
PART 5. TIME LIMITS ON LEGAL ACTIONS AND CERTAIN
DEFENSES .................................................. 29
PART 6. ASSIGNMENT NOT PERMITTED .................... 29

### SECTION FOUR
#### ERISA

ERISA INFORMATION AND ERISA NOTICE OF YOUR RIGHTS ... 30

ii

iii

Ex. _A_ P. 12

Case 3:03-cv-01766-H-BLM

# INDEX OF DEFINED TERMS

ACCIDENTAL BODILY INJURY ........... 3
ANNUAL EARNINGS ........... 3
CPI-W ........... 8
DISABILITY (LTD) ........... 6
ELIMINATION PERIOD (LTD) ........... 15
EMPLOYER ........... 3
EVIDENCE OF INSURABILITY ........... 
INCOME FROM OTHER SOURCES ........... 8
HOSPITAL ........... 
GROUP POLICY ........... 3
INDEXED PREDISABILITY EARNINGS ........... 7
INSURANCE ........... 
K. OWNER-EMPLOYEE ........... 
LTD TERM DISABILITY ........... 4
LTD BENEFIT ........... 4
LTD CONVERSION INSURANCE ........... 4
MAXIMUM BENEFIT PERIOD (LTD) ........... 15
MEMBER ........... 16
MENTAL DISORDER ........... 20
P. C. PARTNER ........... 
PHYSICIAN ........... 4
PRE-EXISTING CONDITION ........... 13
PREDISABILITY EARNINGS ........... 
PREGNANCY ........... 4
PRIOR PLAN ........... 4
PRIOR PLAN ........... 4
SICKNESS ........... 
STANDARD ........... 4
SURVIVORS BENEFIT ........... 17

# SECTION ONE

## SCHEDULE OF INSURANCE AND GENERAL DEFINITIONS

### PART 1. SCHEDULE OF INSURANCE

**1. AMOUNT OF LTD BENEFIT**

Your LTD Benefit equals:

(a) your Maximum LTD Benefit, reduced by
(b) your Income From Other Sources

Your Maximum LTD Benefit equals A or B, whichever is less, where:

SEE SECTION TWO, C. INCOME FROM OTHER SOURCES.

A = A percentage of your Predisability Earnings, in accordance with your Employer's Plan.

B = The maximum benefit amount.

See your Certificate Label for the percentage of your Predisability Earnings and the maximum benefit amount selected by your Employer. The minimum LTD Benefit is $50.

**2. ELIMINATION PERIOD**

See your Certificate Label for your Elimination Period.

**3. MAXIMUM BENEFIT PERIOD** Your Maximum Benefit Period is determined in accordance with your Employer's Plan, as follows:

| Your Age When Disability Begins | Your Maximum Benefit Period Plan MBP1 |
|---|---|
| 61 or younger | To age 65 |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 or older | 12 months |

Ex. A P. 13

# PART 1. SCHEDULE OF INSURANCE (Continued)

## Plan MBP2

| Your Age When Disability Begins | Your Maximum Benefit Period |
|---|---|
| 65 or younger | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 or older | 12 months |

SEE SECTION TWO, FOR ADDITIONAL TERMS OF YOUR LTD INSURANCE.

# PART 2. GENERAL DEFINITIONS

*Accidental Bodily Injury* means an injury to your body caused by an accident.

*Annual Earnings* means:

**Partners, P. C. Partners, L. L. C. Owner-Employees, Sole Proprietors, and S-Corporation Shareholders.**

If you are a partner, L. L. C. Owner-Employee, sole proprietor, or s-corporation shareholder, Annual Earnings means your annual compensation from your Employer during the Employer's prior tax year. If you are a P. C. Partner, Annual Earnings means your annual compensation received by your professional corporation from the Employer participating under the Group Policy during that Employer's prior tax year. Your annual compensation is determined by adding the following amounts as reported on the applicable Schedule K-1, Schedule C, Form W-2 or S-Corporation federal income tax return:

1.  Your ordinary income from trade or business activity(ies).

2.  Your guaranteed payments, if you are a partner.

3.  Your net profit from business.

4.  Your compensation (as an officer), salary, or wages, if you are an s-corporation shareholder.

If you were not a partner, P. C. Partner, L. L. C. Owner-Employee, sole proprietor, or s-corporation shareholder of the Employer during the entire prior tax year, your Annual Earnings will be 12 times your average monthly compensation for your period as a partner, P. C. Partner, L. L. C. Owner-Employee, sole proprietor, or s-corporation shareholder.

## All Other Members

For all other Members, Annual Earnings means your annual rate of earnings from your Employer. Your Annual Earnings will be based on your earnings in effect on your last full day of Active Work. Annual Earnings includes:

1.  Commissions for the preceding 12 calendar months. If you have not been employed by your Employer for a full 12 months, your annual rate of earnings includes 12 times the average monthly commissions paid to you by your Employer for your period of employment.

2.  Shift differential pay.

Ex. A P. 14

## PART 2. GENERAL DEFINITIONS (Continued)

Annual Earnings does not include:

1. Bonuses.
2. Overtime pay.
3. Any other extra compensation.

**All Members**

Annual Earnings includes:

1. Contributions you make through a salary reduction agreement with your Employer to:

   An Internal Revenue Code (IRC) Section 401(k), 403(b), 408(k), or 457 deferred compensation arrangement; or

   An executive nonqualified deferred compensation arrangement.

2. Amounts contributed to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan.

Annual Earnings does not include your Employer's contributions on your behalf to any deferred compensation arrangement or pension plan.

*Employer* means your employer (including approved affiliates or subsidiaries) who is a member of the Standard Select Trust and whose participation under the Group Policy is approved in writing by Standard.

*Providing Evidence of Insurability.* If required, means you must:

- Complete and sign a health and medical history form provided by Standard;
- Sign Standard's form authorizing Standard to obtain information about your health; and
- Provide any additional information about your insurability reasonably required by Standard.

All required information must be provided to Standard at your expense.

*Group Policy* means Standard's group policy 604131A issued to the Trustee of the Standard Select Trust.

## PART 2. GENERAL DEFINITIONS (Continued)

*Hospital* means a legally operated hospital providing full-time medical care and treatment under the direction of a full-time staff of licensed physicians (M.D. or D.O.). Rest homes, nursing homes, convalescent homes, homes for the aged, and facilities primarily affording custodial, educational, or rehabilitative care are not hospitals.

*Insurance* means the Insurance for which you are Insured under the Group Policy, but does not include LTD Conversion Insurance under the LTD Conversion Insurance Rider to the Group Policy.

*L. L. C. Owner-Employee* means an individual who owns an equity interest in the Employer and is actively employed in the conduct of the Employer's business.

*Long Term Disability (LTD) Insurance* means your long term disability insurance under the Group Policy, but does not include LTD Conversion Insurance under the LTD Conversion Insurance Rider to the Group Policy.

*LTD Benefit* means the monthly Long Term Disability Insurance benefit payable to you according to the terms of the Group Policy, but does not include the LTD Conversion Insurance benefit payable under the LTD Conversion Insurance Rider to the Group Policy.

*LTD Conversion Insurance* means disability insurance under the LTD Conversion Insurance Rider to the Group Policy.

*P. C. Partner* means the sole active employee and majority shareholder of a professional corporation in partnership with the Employer participating under the Group Policy.

*Physician* means a licensed medical professional, other than yourself, diagnosing and treating you within the scope of the license.

*Predisability Earnings* means your Annual Earnings divided by 12.

*Pregnancy* means your pregnancy, childbirth or related medical conditions.

*Prior Plan* means your Employer's group long term disability insurance program in effect on the day before the effective date of the Employer's participation under the Group Policy.

*Sickness* means your sickness, illness or disease.

*Standard* means Standard Insurance Company, P.O. Box 711, Portland, Oregon 97207.

Ex. A P. 15

# SECTION TWO

## BENEFIT PROVISIONS

### LONG TERM DISABILITY INSURANCE

**INSURING CLAUSE**

Subject to all the terms of the Group Policy, Standard will pay the LTD Benefit described in the Schedule of Long Term Disability Insurance upon receipt of satisfactory written proof that you have become Disabled while insured for Long Term Disability Insurance under the Group Policy.

**DEFINITION OF DISABILITY**

The definition of Disability applicable to you will be the definition approved for your Employer by Standard. See your Certificate Label.

**1.    THE OWN-OCC TO AGE 65 DEFINITION** (Certified Public Accounting Firms, Attorney Firms, Architectural Firms, Engineering Firms)

For Certified Public Accountants, Attorneys, Architects, and Engineers:

You are Disabled if, as a result of Sickness, Accidental Bodily Injury, or Pregnancy, you are either:

  (a)  Unable to perform with reasonable continuity the material duties of your own occupation; or

  (b)  Unable to earn more than 80% of your Indexed Predisability Earnings while working in your own occupation.

You are not Disabled if you are earning 80% or more of your Indexed Predisability Earnings while working in another occupation.

**Note:** For attorneys employed by Attorney firms, the term "own occupation" means your specialty in the practice of law.

### LONG TERM DISABILITY INSURANCE (Continued)

For all other Members:

You are Disabled if you meet the criteria of the 80/80 definition of Disability. SEE 2. THE 80/80 DEFINITION BELOW.

**2.    THE 80/80 DEFINITION**

Until LTD Benefits have been paid for 24 months, you are Disabled if, as a result of Sickness, Accidental Bodily Injury, or Pregnancy, you are either:

  (a)  Unable to perform with reasonable continuity the material duties of your own occupation; or

  (b)  Unable to earn more than 80% of your Indexed Predisability Earnings while working in your own occupation.

After LTD Benefits have been paid for 24 months, you are Disabled if, as a result of Sickness, Accidental Bodily Injury, or Pregnancy, you are either:

  (a)  Unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by education, training, and experience; or

  (b)  Unable to earn more than 80% of your Indexed Predisability Earnings while working in your own or any other occupation.

**3.    THE 80/50 DEFINITION**

Until LTD Benefits have been paid for 24 months, you are Disabled if, as a result of Sickness, Accidental Bodily Injury, or Pregnancy, you are either:

  (a)  Unable to perform with reasonable continuity the material duties of your own occupation; or

  (b)  Unable to earn more than 80% of your Indexed Predisability Earnings while working in your own occupation.

After LTD benefits have been paid for 24 months, you are Disabled if, as a result of Sickness, Accidental Bodily Injury, or Pregnancy, you are either:

  (a)  Unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by education, training, and experience; or

  (b)  Unable to earn more than 50% of your Indexed Predisability Earnings while working in your own or any other occupation. Indexed Predisability Earnings means an amount determined as follows:

Ex. 4 P. 16

## LONG TERM DISABILITY INSURANCE (Continued)

Until you have been Disabled for one year, your Indexed Predisability Earnings will equal your Predisability Earnings on your last full day of Active Work before you became Disabled. Thereafter, Standard will increase the amount of your Indexed Predisability Earnings on each anniversary of the date you become disabled. The amount of each increase will equal A or B, whichever is less, where:

A = 10% of your Indexed Predisability Earnings during the preceding year of Disability.

B = The rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year multiplied by your Indexed Predisability Earnings during the preceding year of Disability. There will never be a decrease in your Indexed Predisability Earnings, even if there is a drop in the Consumer Price Index (CPI-W).

CPI-W means the Consumer Price Index for the Urban Wage Earners and Clerical Workers published by the United States Department of Labor. If the index is discontinued or changed, Standard may use another nationally published Index which is comparable to the CPI-W.

## INCOME FROM OTHER SOURCES

Income From Other Sources is used to reduce your Maximum LTD Benefit and is explained in the following definition, exceptions, and rules.

1. **DEFINITION OF INCOME FROM OTHER SOURCES**
   Income From Other Sources means:

   (a) Any sick pay or other salary continuation (other than vacation pay) paid to you by your Employer which, when added to the amount of your Maximum LTD Benefit, exceeds 100% of your Predisability Earnings;

   (b) During the first 12 months following your first day of work while LTD Benefits are payable (see Section Two, I. WORKING WHILE DISABLED): The amount of your Work Earnings which, when added to your Maximum LTD Benefit, exceeds 100% of your Indexed Predisability Earnings. Thereafter, your Maximum LTD Benefit will be reduced by one-half of your Work Earnings.

## LONG TERM DISABILITY INSURANCE (Continued)

(c) Any amount you receive or are eligible to receive as a result of your disability under a Workers' Compensation Act or similar law, including amounts for partial or total disability, whether permanent or temporary. (Benefits for permanent disability are not deductible if you are a resident of California.);

(d) Any amount you, your spouse or your children receive or are eligible to receive because of your disability or retirement under the Federal Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act. Early retirement benefits payable prior to normal retirement age under the plan or act will not be used to reduce the amount of your Maximum LTD Benefit unless they are actually received;

(e) The amount you receive or are eligible to receive because of your disability under any state unemployment compensation disability benefit law or state disability income benefit law;

(f) The amount you receive or are eligible to receive because of your disability under any group insurance coverage, other than group credit insurance or group mortgage disability insurance.

(g) Any disability or retirement benefits paid to you under a Retirement Plan to which your Employer made a contribution, except;

   (1) Any lump sum distribution of your entire interest in the plan;

   (2) Any amount which is attributable to your contributions to the plan; or

   (3) Any amount which you could have received upon termination of employment without being disabled or retired.

Retirement Plan means a defined benefit plan or a defined contribution plan providing disability or retirement benefits for employees. It does not include:

   (1) A profit sharing plan;
   (2) A thrift or savings plan;
   (3) A deferred compensation plan;
   (4) A 401(k) plan;
   (5) An Individual Retirement Account (IRA);
   (6) A Tax Sheltered Annuity (TSA);
   (7) A stock ownership plan;

Ex. A P. 17

## LONG TERM DISABILITY INSURANCE (Continued)

(g) A Keogh (HR-10) Plan with respect to partners; or

(g) A retirement plan under a Professional Service Corporation with respect to Principals.

(h) Any benefits you receive under any unemployment compensation law; or

(i) Any amount received by compromise, settlement or other method as a result of a claim for any of (a) through (h) above.

**2. EXCEPTIONS TO INCOME FROM OTHER SOURCES**
The following will not be used to reduce the amount of your Maximum LTD Benefit:

(a) Any cost of living increase in any Income From Other Sources, provided that the increase becomes effective while you are Disabled and while you are eligible to receive the Income From Other Sources. (This exception does not apply to any increase in your earnings from any work);

(b) Any amount received as reimbursement for hospital, medical, or surgical expense;

(c) Any amount which represents reasonable attorneys' fees incurred in connection with the claim for Income From Other Sources;

(d) Any benefits under the Federal Social Security Act received by or on behalf of your dependent child age 18 or older;

(e) Benefits from any individual disability insurance policy; or

(f) If you are a resident of California, any amount you receive or are eligible to receive as a result of your permanent disability, whether total or partial, under a Worker's Compensation act or similar law will not be considered Income From Other Sources.

**3. RULES FOR INCOME FROM OTHER SOURCES**
Each month your Maximum LTD Benefit will be reduced by the Income From Other Sources for the same monthly period, even if you actually receive the Income From Other Sources in another month.

## LONG TERM DISABILITY INSURANCE (Continued)

If you receive any Income From Other Sources periodically other than monthly, Standard will determine the monthly equivalent and use that amount to reduce your Maximum LTD Benefit.

If you receive any Income From Other Sources in a lump sum, Standard will prorate the lump sum over the period of time for which the lump sum was paid and use that amount to reduce your Maximum LTD Benefit.

If no period of time is stated, Standard will determine the maximum period of time to which the lump sum is fairly attributable and prorate the lump sum over that period of time.

With respect to Income From Other Sources which you are claiming but have not yet received, Standard will offer you the following options:

Option 1: Standard will reduce your Maximum LTD Benefit each month by the monthly amount of the Income From Other Sources you expect to receive for that period. You will be reimbursed by Standard if this results in an underpayment of your claim for LTD Benefits. You must repay Standard if this results in an overpayment of your claim for LTD Benefits.

Option 2: Standard will pay you LTD Benefits without any reduction on account of that Income From Other Sources until your claim for that Income From Other Sources is approved. You must repay Standard for any resulting overpayment of your claim for LTD Benefits.

Option 2 becomes effective automatically if you fail to make a choice.

Ex. A P. 18

**LONG TERM DISABILITY INSURANCE (Continued)**

You must notify Standard of the amount of the Income From Other Sources when it is approved. If it is approved for a period when Standard has already paid an LTD Benefit, Standard will recompute the amount of the LTD Benefit which was payable to you for that period. If you have been underpaid, Standard will pay you the amount of any such underpayment with interest at a rate determined by Standard. If you have been overpaid, Standard will notify you of the amount of the over payment. You must immediately reimburse Standard for the amount of the overpayment. You will not receive any payments from Standard until Standard has been reimbursed in full.

In the meantime, any LTD Benefits becoming payable will be applied to reduce the amount of the overpayment of your claim for LTD Benefits.

4. **DOCUMENTATION OF INCOME FROM OTHER SOURCES FOR LTD INSURANCE**
Documentation of Income From Other Sources must be provided to Standard at your expense.

If Standard reasonably believes that you are receiving or are eligible to receive Income From Other Sources, Standard has the right to require satisfactory written documentation:
(a) That you have made timely claim for the Income From Other Sources;
(b) That you have properly pursued each claim; and
(c) Of the amount of the Income From Other Sources.

Standard will send you a written request for any required documentation. You must provide such documentation within 60 days after the written request is mailed to you. Otherwise, Standard, at its sole discretion, may elect to reduce your LTD Benefits by the amount Standard reasonably believes you are receiving or would have been eligible to receive upon timely and proper pursuit of a claim for the Income From Other Sources. If your claim for LTD Benefits has been overpaid or underpaid, Standard will notify you of the difference and the overpayment or underpayment will be handled as described in 3. RULES FOR INCOME FROM OTHER SOURCES above.

**LONG TERM DISABILITY INSURANCE (Continued)**

If you later provide the required documentation within a reasonable time, Standard will recompute the amount of LTD Benefits which were payable. Overpayments and underpayments will be handled as described in 3. RULES FOR INCOME FROM OTHER SOURCES above.

D. **RISKS NOT COVERED**
1. War: You are not covered for a Disability caused or contributed to by War or any act of War. War means declared or undeclared war, whether civil or international, and any substantial armed conflict between organized forces of a military nature.
2. Intentionally self-inflicted injury: You are not covered for a Disability caused or contributed to by an intentionally self-inflicted injury.
3. Pre-existing Condition:
a. Becoming Insured:
You are not covered for a Disability caused or contributed to by a Pre-existing Condition or medical or surgical treatment of a Pre-existing Condition unless you meet both of the following requirements on the date you become Disabled:
(1) You have been continuously insured for LTD Insurance under the Group Policy for at least 24 months; and
(2) You have been Actively at Work for at least one full day after those 24 months of continuous LTD Insurance.

Pre-existing Condition means a mental or physical condition for which you have done any of the following at any time during the 180-day period just before the effective date of your LTD Insurance:
(1) Consulted a Physician;
(2) Received medical treatment or services; or
(3) Taken prescribed drugs or medications.

Ex. A P. 19

## LONG TERM DISABILITY INSURANCE (Continued)

Continuity of Coverage Provision for Members employed by an Employer with 10 or more insured members on the Employer's effective date of participation under the Group Policy for LTD Insurance who were insured under the Prior Plan:

If you become Disabled by a Pre-existing Condition subject to the above Pre-existing Condition exclusion, LTD Benefits will nonetheless be payable, if all of the following are true.

(1) You were insured under the Prior Plan on the day before the effective date of your Employer's participation under the Group Policy for LTD Insurance;

(2) You were continuously insured for LTD Insurance under the Group Policy from the effective date of your Employer's participation under the Group Policy for LTD Insurance through the date the Pre-existing Condition became Disabling; and

(3) Benefits would have been payable under the Prior Plan if the Prior Plan had remained in force, taking into consideration the Pre-existing Condition exclusion, if any, of the Prior Plan.

However, the LTD Benefit payable by Standard will be determined as follows:

If the benefit payable under the Prior Plan is less than the LTD Benefit payable in accordance with the Group Policy and your Employer's approved Participation Agreement, the LTD Benefit will be the benefit that would have been payable under the Prior Plan if the Plan had remained in force.

If the LTD Benefit payable in accordance with the Group Policy and your Employer's approved Participation Agreement is equal to or less than the benefit payable under the Prior Plan, the LTD Benefit will be the LTD Benefit payable under the Group Policy.

## LONG TERM DISABILITY INSURANCE (Continued)

b. Changes in Your LTD Insurance: If your LTD Insurance changes to provide an increase in your LTD Benefit amount (excluding changes caused by salary increases) or a decrease in your Elimination Period, the following Pre-existing Condition exclusion will apply to that change:

If your Disability is caused or contributed to by a Pre-existing Condition or medical or surgical treatment of a Pre-existing Condition, the increase in your LTD Benefit amount or the decrease in your Elimination Period will not be in effect on the date you become Disabled unless you meet both of the following requirements on that date:

(1) You have been continuously insured for LTD Insurance for at least 24 months after the effective date of the change; and

(2) You have been Actively at Work for at least one full day after those 24 months.

Pre-existing Condition means a physical or mental condition for which you have done any of the following at any time during the 180-day period just before the effective date of the change:

(a) Consulted a Physician;

(b) Received medical treatment or services; or

(c) Taken prescribed drugs or medications.

### E. LIMITATIONS

1. Elimination Period: No LTD Benefits are payable for the Elimination Period.

2. Maximum Benefit Period: No LTD Benefits are payable after the end of the Maximum Benefit Period.

3. Regular Care of a Physician: No LTD Benefits will be paid for any period of Disability when you are not under the regular care of a Physician.

4. Mental Disorder: Payment of LTD Benefits is limited to 24 months for each period of Disability caused or contributed to by a Mental Disorder. However, if you are a resident patient in a Hospital at the end of the 24 months, this limitation will not apply while you remain continuously confined.

Ex. A P. 20

LONG TERM DISABILITY INSURANCE (Continued)

Mental Disorder means a mental, emotional, or behavioral disorder.

**F. EFFECT OF CHANGES IN PREDISABILITY EARNINGS**
The Predisability Earnings used to compute your LTD Benefit will be based on your Predisability Earnings in effect on your last full day of Active Work before you became Disabled. Any change in your earnings which is approved or becomes effective after that last full day of Active Work will have no effect on the amount of the Predisability Earnings used to compute your LTD Benefit for that period of Disability.

**ELIMINATION PERIOD PROVISIONS**
(See Schedule of Insurance)
Elimination Period means the length of time you must be continuously Disabled before LTD Benefits become payable. Your Elimination Period begins on the date you become Disabled.

You must be under the regular care of a Physician during the Elimination Period.

Temporary recovery from your Disability during the Elimination Period will have the following effect: For purposes of serving the Elimination Period, all periods of Disability from the same cause or causes will be added together and treated as one period of continuous Disability. However, you must serve the full Elimination Period within a period equal to 35 days for each 30 days of the Elimination Period.

**MAXIMUM BENEFIT PERIOD PROVISIONS**
(See Schedule of Insurance)
Maximum Benefit Period means the longest period of time for which LTD Benefits are payable for any one period of continuous Disability, whether from one or more causes.

Your Maximum Benefit Period begins at the end of the Elimination Period. During the Maximum Benefit Period, LTD Benefits are paid at the end of each monthly period for which you qualify for LTD Benefits.

LTD Benefits will stop at your death or at any time during the Maximum Benefit Period when you no longer qualify for LTD Benefits. LTD Benefits will stop at the end of the Maximum Benefit Period even if you are still Disabled.

LONG TERM DISABILITY INSURANCE (Continued)

After LTD Benefits become payable, temporary recovery from your Disability will have the following effect: For purposes of continuing LTD Benefits during the Maximum Benefit Period, any two periods of Disability from the same cause or causes will be added together and treated as one period of continuous Disability if they are separated by a period of recovery of less than 180 days. Thus, a new Elimination Period will not be required, the Predisability Earnings used to compute your LTD Benefit will not change, and the Maximum Benefit Period remaining will be the balance of the Maximum Benefit Period remaining unused before the period of recovery.

No LTD Benefits will be payable under this provision after benefits become payable to you under any other group long term disability insurance policy. This rule prevents double coverage if you become insured under another group disability insurance policy while you are working during a period of temporary recovery.

**I. WORKING WHILE DISABLED**
Standard allows you to serve your Elimination Period and your Maximum Benefit period while you are working, provided that you are Disabled. Your maximum LTD Benefit will be reduced by your Work Earnings as follows:

1. During the first 12 months after your first day of work while LTD Benefits are payable, Standard will deduct the amount of your Work Earnings which, when added to your Maximum LTD Benefit, exceeds 100% of your Indexed Predisability Earnings. This reduction formula applies only during the 12-month period immediately following your first day of work while LTD Benefits are payable. This 12-month period will not be extended.

2. Thereafter, your Maximum LTD Benefit will be reduced by one-half of your Work Earnings.
Work Earnings means your gross monthly earnings from work performed while you are Disabled, including earnings from your Employer, another employer, or self-employment.

**J. SURVIVORS BENEFIT**
If you die while LTD Benefits are payable to you, Standard will pay a lump sum Survivors Benefit. The following rules will apply:

1. A Survivors Benefit will be paid only if you are survived by a spouse or by an unmarried child under age 25.

2. The Survivors Benefit will equal three times the amount of your Maximum LTD Benefit.

Ex. A P.21

## LONG TERM DISABILITY INSURANCE (Continued)

3. Any Survivors Benefit payable will first be applied to reduce the amount of any outstanding overpayment of your claim for LTD Benefits.

4. The Survivors Benefit will be paid to any one or more of the following, at the option of Standard:

a. Your spouse;

b. One or more of your unmarried children under age 25; or

c. Any person providing the care and support of any of them.

K. **WAIVER OF PREMIUM**
Your Long Term Disability Insurance in effect when you become Disabled will be continued without payment of premiums while LTD Benefits are payable.

If a period of continuous Disability is extended by a new cause while LTD Benefits are payable, LTD Benefits will continue while you remain Disabled, subject to the terms of the Group LTD Insurance Policy and the following rules:

1. LTD Benefits will not continue beyond the end of the original Maximum Benefit Period.

2. No LTD Benefits will be paid for any extension of a period of continuous Disability caused or contributed to by an excluded risk. See D. RISKS NOT COVERED.

L. **BENEFITS AFTER INSURANCE ENDS OR IS CHANGED**
Your right to receive LTD Benefits for a period of continuous Disability which begins while you are insured for LTD Insurance under the Group Policy will not be affected by:

1. The termination of the Group Policy after the date you become Disabled;

2. The termination of your LTD Insurance while the Group Policy remains in force;

3. The termination of your Employer's participation under the Group Policy for LTD Insurance after the date you become Disabled; or

4. Any amendment to the Group Policy approved after the date you become Disabled.

## LONG TERM DISABILITY INSURANCE (Continued)

M. **RIGHT TO CONVERT TO LTD CONVERSION INSURANCE**
If your LTD Insurance ends, you may have a right to buy LTD Conversion Insurance under the LTD Conversion Insurance Rider to the Group Policy without submitting Evidence of Insurability. You will have this right, called the Right to Convert, within 31 days after the date your LTD Insurance ends, provided that all of the following conditions are met:

1. Your LTD Insurance ends for any reason other than:

(a) The termination or amendment of the Group Policy;

(b) Your failure to pay the required premium contribution for your LTD Insurance;

(c) The termination of your Employer's participation under the Group Policy for LTD Insurance; or

(d) Your Employer's failure to pay the required premium contribution to the Policyowner.

2. You have been insured under your Employer's group long term disability insurance program (which includes the Prior Plan) for at least one year on the date your LTD Insurance ends.

3. You are not Disabled on the date your LTD Insurance ends.

If you have a Right to Convert, you must exercise this right within 31 days after the date your LTD Insurance ends by:

1. Applying to Standard in writing for the coverage under the LTD Conversion Insurance Rider to the Group Policy;

2. Selecting the amount of your Maximum LTD Conversion Insurance Benefit; or

3. Paying the first premium for your LTD Conversion Insurance.

Your Maximum LTD Conversion Insurance Benefit is the monthly LTD Conversion Insurance Benefit payable if you have no Income From Other Sources. Your Maximum LTD Conversion Insurance Benefit cannot exceed the smallest of the following amounts:

1. $4,000 without Evidence of Insurability, or $8,000 with approved Evidence of Insurability;

Ex. A P. 22

## LONG TERM DISABILITY INSURANCE (Continued)

2. 60% of your Predisability Earnings as of the date your LTD Insurance ended; or
3. The maximum LTD Benefit payable to you if you had become Disabled on the day before your LTD Insurance ended and you had no Income From Other Sources.

If you exercise your Right to Convert, your LTD Conversion Insurance will become effective on the day after your LTD Insurance ends.

LTD Conversion Insurance is not a continuation of your LTD Insurance. It is a separate and distinct coverage under the LTD Conversion Insurance Rider to the Group Policy. The Exclusions and Limitations, Elimination Period, Maximum Benefit Period, definition of Income From Other Sources, and other plan features may differ from those for your LTD insurance. You may obtain a copy of the LTD Conversion Insurance Rider from the Plan Administrator or Standard. The cost of LTD Conversion Insurance is shown in the LTD Conversion Insurance Rider.

LTD Conversion Insurance obtained under this Right to Convert provision will not be affected by the termination of the Group Policy, an amendment of the Group Policy so as to terminate LTD Insurance on any class of Members, or the termination of your Employer's participation under the Group Policy for LTD.

PLEASE SEE SECTION THREE - GENERAL PROVISIONS FOR ADDITIONAL PROVISIONS REGARDING YOUR COVERAGE.

## SECTION THREE

## GENERAL PROVISIONS

## PART 1. BECOMING INSURED

To become insured you must meet each of the following requirements plus the Active Work requirement:
1. You must be a Member;
2. You must be eligible for Insurance;

## PART 1. BECOMING INSURED (Continued)

3. You must apply for insurance, if required, and
4. You must submit and have approved Evidence of Insurability, if required.

A. **DEFINITION OF MEMBER**
You are a Member if you meet the requirements of the Member definition applicable to your Employer. See your Certificate Label for the applicable definition.

Definition 1:

You are a Member if you are both of the following:

(a) An active sole proprietor, L. L. C. Owner-Employee, partner, P. C. Partner, s-corporation shareholder, or employee of the Employer, other than a temporary or seasonal employee; and

(b) Regularly scheduled to work at least 30 hours each week at the Employer's usual place of business.

Definition 2:

You are a Member if you are both of the following:

(a) An active sole proprietor, L. L. C. Owner-Employee, partner, P. C. Partner, s-corporation shareholder, or an active management, supervisory, administrative, sales or clerical employee of the Employer, other than a temporary or seasonal employee; and

(b) Regularly scheduled to work at least 30 hours each week at the Employer's usual place of business.

B. **ELIGIBILITY FOR INSURANCE**
You become eligible when you have served your waiting period for eligibility. See your Certificate Label.

C. **APPLICATION FOR INSURANCE**
(For Contributory Groups)
If you are required to contribute toward the cost of your Insurance (see your Certificate Label), you must apply and agree to make the required premium contributions to your Employer by signing a completed enrollment card. Your Employer determines the amount of your contribution.

Ex. A P.23

## PART 1. BECOMING INSURED (Continued)

### D. EVIDENCE OF INSURABILITY

You must provide Standard with satisfactory Evidence of insurability if:

(a) you were eligible to become insured under the Prior Plan more than one month before your Employer's participation under the Group Policy, but did not become insured because either (1) your application for insurance was declined or (2) you did not apply;

(b) you apply for insurance more than 31 days after you first become eligible; or

(c) you were required to provide Standard with satisfactory Evidence of Insurability during a prior period of eligibility under the Group Policy and either (1) you did not provide Standard with satisfactory Evidence of Insurability, or (2) Standard disapproved your Evidence of Insurability.

### E. EFFECTIVE DATE OF INSURANCE

(See your Certificate Label for your Coverage Effective Date) The effective date of your Insurance is determined as follows:

The amount of your Insurance which is not subject to satisfactory Evidence of Insurability becomes effective as follows:

**Insurance Subject To Satisfactory Evidence Of Insurability**
The amount of your Insurance which is subject to satisfactory Evidence of Insurability becomes effective on the date Standard approves your Evidence of Insurability, provided you meet the Active Work requirement on that date.

**Contributory Groups**
Your Insurance becomes effective on the appropriate following date, provided you meet the Active Work requirement on that date:

1. The effective date of your Employer's Insurance under the Group Policy if you (a) apply on or before that date and (b) were insured under the Prior Plan on the preceding day.

2. The following applicable date if 1. does not apply:
   (a) The date you become eligible for Insurance if you apply on or before that date.
   (b) The first day of the calendar month coinciding with or next following the date you apply for Insurance if you apply within 31 days after you first become eligible for Insurance.

## PART 1. BECOMING INSURED (Continued)

**Noncontributory Groups**
Your Insurance becomes effective on the date you become eligible, provided you meet the Active Work requirement on that date.

### F. ACTIVE WORK REQUIREMENT

If you were Disabled on the day before the scheduled effective date of your Insurance, the effective date of your Insurance will be delayed until the first day after you complete one full day of Active Work.

For purposes of this Active Work requirement, you are Disabled if you are unable, as a result of Sickness, Accidental Bodily Injury, or Pregnancy, to perform the material duties of your own occupation with reasonable continuity.

Active Work and Actively at Work mean performing the material duties of your job at your Employer's usual place of business.

This Active Work requirement also applies to any increase in your Insurance.

Ex. A  P. 24

Your insurance will end automatically on the earliest of the following dates:

The date you cease to be a Member as defined in Part 1. A. DEFINI-TION OF MEMBER;

The date you become a full-time member of the armed forces of any country;

The date your Employer's participation under the Group Policy ceases;

The date your insurance ends because you fail to make the required premium contribution to the Policyowner for your insurance;

The last day of the last period for which you made the required premium contribution for your insurance;

The date the Group Policy terminates;

1. The date you cease to be Actively at Work for your Employer on your regular work days for any reason. However, your insurance may be continued (unless either ends under items a. through f. above) during the following periods while you are not Actively at Work:

2. While you are receiving full salary (including sick pay) from your Employer;

3. During the Elimination Period and the Maximum Benefit Period; and

4. During a leave of absence approved by your Employer and scheduled to last for 30 days or less.

# PART 3. BECOMING INSURED AGAIN AFTER INSURANCE ENDS

You may become insured again under the Group Policy after your insurance ends on the same basis as a new Member. However, the requirements to become insured will be modified in specific situations as follows:

**Contributory Groups**

If your insurance ends because you fail to make the required premium contribution, you must provide Standard with satisfactory Evidence of Insurability.

**Cessation Of Membership**

If your insurance ends because you cease to be a Member and you become a Member again within 90 days after your insurance ends, the following rules will apply to your becoming insured again:

a. Eligibility: You will become eligible on the first day of the calendar month coinciding with or next following the date you become a Member again.

b. Prior Evidence of Insurability: If Standard approved your Evidence of Insurability during your prior period of insurance, you will not be required to provide Standard with satisfactory Evidence of Insurability to become insured again. However, if you are required to contribute toward the cost of your insurance, this waiving of the Evidence of Insurability requirement will apply only if you enroll within 31 days after the date you become a Member again.

c. Pre-existing Condition: The Pre-existing Condition exclusion will be applied as if there had not been an interruption in your LTD insurance. However, the period when you were not insured will not be applied toward serving the time limits of the Pre-existing Condition exclusion.

Your insurance will become effective again on the date determined from Part 1. BECOMING INSURED and will not be retroactive to the date your insurance ended.

Ex. 4   P. 25

# PART 4. CLAIMS PROVISIONS AND PROCEDURES

## A. PAYMENT OF BENEFITS

All LTD Benefits will be paid to you. Any LTD Benefit remaining unpaid at your death will be paid to the person or persons receiving the Survivors Benefit. If no Survivors Benefit is paid, the unpaid LTD Benefit will be paid to your estate.

## B. TIME LIMITS FOR FILING A CLAIM

Claims not filed within the time limits shown below will be denied and no benefit will be paid. These time limits will not apply during any period when the claimant lacked the legal capacity to file a claim.

All LTD Benefits must be claimed within 120 days after the end of the respective Elimination Period or as soon thereafter as reasonably possible and, in any case, within one year after the end of that 120-day period.

## C. FILING A CLAIM

All claims should be submitted on Standard's forms. You should obtain claim forms from your Employer or the Plan Administrator.

You may also request claims forms from Standard. If Standard fails to provide you with claims forms within 15 days of your request, you may submit your claim in a letter stating the occurrence, character, and extent of the event for which the claim is made.

## D. PROOF OF LOSS

Satisfactory written proof of loss in connection with a claim for benefits must be provided to Standard at the expense of the person filing a claim.

No benefits will be paid until Standard has received satisfactory written proof of loss in connection with the claim for benefits. Standard must receive satisfactory written proof of the following before LTD Benefits will be paid:
1. That you became Disabled while insured under the Group Policy;
2. That you were Disabled throughout the respective Elimination Period and the period for which LTD Benefits are claimed;
3. That your Disability results from a cause not excluded in the Group Policy;
4. That you are under the regular care of a Physician; and
5. Such additional information as Standard may reasonably require in connection with your claim.

26

# PART 4. CLAIMS PROVISIONS AND PROCEDURES (Continued)

## E. DOCUMENTATION OF CLAIM FOR LTD BENEFITS

You must submit the following documents at your expense:
1. A completed claim statement signed by you;
2. A completed claim statement signed by your Employer;
3. A completed claim statement signed by your treating Physician;
4. Your written authorization for Standard to obtain the records and information needed to determine your eligibility for LTD Benefits; and
5. Such other documents as Standard may reasonably require.

Standard will require you to submit additional documentation of your claim at your expense at reasonable intervals while you are receiving LTD Benefits.

## F. INVESTIGATION OF YOUR CLAIM

Standard has the right to conduct an independent investigation of any claim for benefits under the Group Policy. No benefits will be paid until Standard has had a reasonable time to conduct an investigation.

## G. INDEPENDENT EXAMINATION AND AUTOPSY

Standard has the right to have you examined at Standard's expense and at reasonable intervals while you are claiming LTD Benefits.

Any such examination will be conducted by one or more physicians or vocational specialists of Standard's choice.

Standard has the right to defer or suspend payment of LTD Benefits if you fail to attend an examination or fail to cooperate with the person conducting the examination.

In such a case, LTD Benefits may be resumed, provided that the required examination occurs within a reasonable time and LTD Benefits are otherwise payable.

Standard has the right to have an autopsy performed at Standard's expense, except where prohibited by law.

27

Ex. A P. 26

**PART 4. CLAIMS PROVISIONS AND PROCEDURES (Continued)**

**H. NOTICE OF DECISION ON CLAIM**

You will receive a written decision on your claim within a reasonable period of time after Standard receives your claim.

If Standard denies all or any part of your claim, you will receive a written notice of denial containing:

1. The reasons for the denial;
2. Reference to the provisions of the Group Policy on which the denial is based;
3. A description of any additional information or documentation you must submit to obtain benefits and an explanation of why such information or documentation is required;
4. Notice of your right to a review of the denial; and
5. A description of the review procedure.

If you do not receive a written decision on your claim within 90 days after your claim is received, you will have an immediate right to request a review under the review procedure, as if your claim had been denied.

**I. REVIEW PROCEDURE**

You have a right to a review of any denial by Standard of all or any part of your claim. To obtain a review, you should send a written request for review to Standard within 60 days after you receive notice of the denial. No special form is required.

As a part of your request for review, you may submit issues and comments in writing and provide additional documentation in support of your claim. You may review pertinent documents related to your request for review.

Standard will review your claim promptly after receiving your request for review. You will receive written notice of Standard's decision within 60 days after your request for review is received, or within 120 days if special circumstances require an extension. The written decision you receive will include the reasons for the decision and reference to the provisions of the Group Policy on which the decision is based.

**PART 5. TIME LIMITS ON LEGAL ACTIONS AND CERTAIN DEFENSES**

You may authorize another person to act for you under this review procedure.

No action at law or in equity may be brought to recover under the Group Policy until 60 days after written proof of loss has been provided to Standard. No such action may be brought more than three years after the time within which proof of loss is required to be furnished.

Any statement you make to obtain insurance will be a representation and not a warranty. No misrepresentation by you will be used to reduce or deny your claim or to deny the validity of your insurance unless:

1. Your insurance would not have been approved except for your misrepresentation;
2. Your misrepresentation is contained in a written instrument signed by you; and
3. A copy of the written instrument containing your misrepresentation has been given to you or your Beneficiary.

After your insurance has been in effect for two years, no misrepresentation by you will be used to reduce or deny your claim or to deny the validity of your insurance. However, a fraudulent misrepresentation made with actual intent to deceive may be used to reduce or deny your claim for LTD Benefits or to deny the validity of your LTD Insurance.

**PART 6. ASSIGNMENT NOT PERMITTED**

Your Certificate is not assignable. The insurance provided and benefits payable are not assignable.

Ex. A P.27

# SECTION FOUR

## ERISA INFORMATION AND
## ERISA NOTICE OF YOUR RIGHTS

The following information required by the "Employee Retirement Income Security Act of 1974" (ERISA) is furnished by the Plan Administrator and is not part of the Group Policy nor this Certificate.

A. **GENERAL PLAN INFORMATION**

1. Name of Plan: Standard Select Trust Insurance Plans
2. Name and Address of Employer: See your Certificate Label
3. Employer Identification Number assigned by IRS: See your Certificate Label
4. Plan Number assigned by the Employer: Contact your Employer
5. Type of plan: Group Insurance Plan
6. Type of Administration: Contract Administration
7. Name, Address and Phone Number of Plan Administrator: Your Employer
8. Name and Address of Registered Agent for the Service of Legal Process: Your Employer
9. Sources of Contributions to the Plan: See your Certificate Label
10. Funding Medium: Standard Insurance Company - Fully Insured

**TERMINATION OF COVERAGE UNDER THE GROUP POLICIES**

Coverage under the Group Policy may be terminated as follows:

1. The Employer may cease participation under the Group Policy at any time by giving prior written notice to Standard.
2. Coverage under the Group Policy will terminate if the Employer fails to pay the required premium.
3. A Member's coverage under the Group Policy will cease if the Member fails to pay any required premium to the Employer.
4. Standard may terminate the Group Policy on any Premium Due date if the number of Members is less than the Minimum Participation Number or less than the Minimum Participation Percentage shown in the Group Policy.

## ERISA INFORMATION AND ERISA NOTICE OF YOUR RIGHTS
(Continued)

5. Standard may terminate an Employer's coverage under the Group Policy on any Premium Due Date if Standard, in its sole judgment, determines that an Employer has failed to promptly furnish any necessary information requested by Standard, or (b) has failed to perform any other obligations relating to the Group Policy.

6. Standard may terminate the Group Policy for any reason at any time. Standard will give 31 days prior written notice to the Policyowner of any termination of the Group Policy and, if required, will give prior written notice to an Employer of the termination of an Employer's coverage under the Group Policy.

C. **YOUR RIGHTS UNDER ERISA**

ERISA gives you certain rights and protections as a participant in your Employer's employee benefit plan. Your rights include the following:

1. RIGHT TO EXAMINE PLAN DOCUMENTS.
You have the right to examine all plan documents, including the annual reports and plan descriptions filed with the U.S. Department of Labor and any insurance contracts or collective bargaining agreements. This Plan Administrator will tell you where the plan documents are available for examination. There will be no charge for examining plan documents.

2. RIGHT TO OBTAIN COPIES OF PLAN DOCUMENTS.
You have the right to obtain copies of all plan documents. You should make your request in writing to the Plan Administrator. There may be a reasonable charge for the copies.

3. RIGHT TO RECEIVE A COPY OF ANNUAL REPORT.
The Plan Administrator must give you a copy of the plan's summary annual financial report if there were 100 or more plan participants at the beginning of the plan year. There will be no charge for the report.

4. RIGHT TO WRITTEN EXPLANATION OF DENIAL.
If your claim for benefits under the employees benefit plan is denied in whole or in part, you must be given a written explanation of the reason for denial. See Section Three, Part 4, H, NOTICE OF DECISION ON CLAIM for further provisions regarding your right to a written explanation.

Ex A P.28

## ERISA INFORMATION AND ERISA NOTICE OF YOUR RIGHTS (continued)

5. **RIGHT TO REVIEW.**

You have the right to have the Plan Administrator review and reconsider any denial of your claim for plan benefit. See Section Three, Part 4. I. REVIEW PROCEDURE for further provisions regarding your right to a review of your claim.

You can protect your rights under ERISA. For example, ERISA gives you the right to file suit in a state or federal court if your claim for benefits under the employee benefit plan is denied or ignored. You can also file suit in a federal court if you request plan documents and do not receive them within 30 days. In such case the court will require the Plan Administrator to give you the plan documents you requested. In some cases the court could also require the Plan Administrator to pay you up to $100 a day until you receive the requested materials.

ERISA gives you rights and protections. ERISA also imposes special obligations on the people (called "fiduciaries") who operate your Employer's employee benefit plan. The "fiduciaries" have a duty to protect the plan's money and the interests of plan participants. ERISA prohibits anyone from discriminating against you in any way to prevent you from receiving a plan benefit or from exercising your rights under ERISA.

If you believe that the "fiduciaries" have misused the plan's money or that you have been discriminated against for asserting your rights, you can ask for help from the U.S. Department of Labor.

You can also file suit in a federal court. If you file a suit, the court will decide who must pay the court costs and legal fees. If your suit is successful, the court may require the "fiduciary" to pay those costs and fees.

If you have any questions about your Employer's employee benefit plan, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor Management Services Administration, Department of Labor.

32

Ex. A P. 29

LAW OFFICE OF JOHN W. TOWER
GENERAL ACCOUNT
9747 BUSINESS PARK AVENUE, SUITE 201
SAN DIEGO, CA 92131
(858) 635-5570

5210

UNION BANK
OF CALIFORNIA N.A.
LA JOLLA, CA 92037
16-49/1220

7/24/2003

PAY TO THE
ORDER OF     Clerk of SD Superior Court

$ **227.50

Two Hundred Twenty-Seven and 50/100************************************************************* DOLLARS

MEMO    1st App. Fee: Gordon v. Standard, et al.

Deborah J. Tower

⑈005210⑈ ⑆122000049⑆ 605003504 0⑈

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

330 W. Broadway
San Diego, CA 92101


TO:

JOHN W. TOWER
LAW OFFICE OF JOHN W. TOWER
9747 BUSINESS PARK AVE. SUITE 201
SAN DIEGO, CA 92131

---

| | |
|---|---|
| JAY GORDON<br><br>               Plaintiff(s)<br><br>vs.<br><br>STANDARD INSURANCE COMPANY<br>               Defendant(s) | Case No.: GIC814967<br><br>**NOTICE OF CASE ASSIGNMENT**<br><br>Judge:      RONALD S. PRAGER<br>Department:  69<br>Phone:     619-685-6137 |

**COMPLAINT FILED** 07/25/03

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SUPCT CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

**CASE MANAGEMENT CONFERENCE:** A Case Management Conference will be set within 150 days of filing the complaint.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

**CERTIFICATE OF SERVICE**

I certify that: I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by personally handing it to the attorney or their personal representative at     SAN DIEGO California.

DATED: 07/25/03                       BY: CLERK OF THE SUPERIOR COURT

SDSC CIV-721(Rev 5-03)            ASG-NOTICE OF CASE ASSIGNMENT

Ex. A P. 31

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Use of Alternate Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court has established a Civil Mediation Program to replace the Mediation Pilot Program established by Code of Civil procedure sections 1730 et seq. The Civil Mediation Program, in effect for cases filed on or after May 1, 2003 or upon stipulation, is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participate in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for court-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Soft Tissue-Auto PI cases valued at $15,000 or less where liability is not in dispute may be assigned to the Soft Tissue-Auto PI Program, upon request (see Local Rule 2.31). Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court Local Rules Division II Chapter III and Code of Civil Procedure 1141 et seq. address this program specifically.

Ex. A  P. 32

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

STANDARD INSURANCE COMPANY, a Corporation,
BARNEY & BARNEY, a Corporation; and DOES 1 through 10, inclusive

| | POR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*

JAY GORDON, an individual and SHEILA GORDON, an individual

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court.<br><br>A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.<br><br>If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.<br><br>There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.*<br><br>*Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.*<br><br>*Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosasde su propiedad sin aviso adicional por parte de la corte.*<br><br>*Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

The name and address of the court is: *(El nombre y dirección de la corte es:)*

San Diego Superior Court
330 West Broadway
San Diego, CA 92101

**CASE NUMBER:** *(Número del Caso)*
GIC814967

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
John W. Tower, Esq., SBN 106425
9747 Business Park Avenue, Suite 201 San Diego, CA  92131        (858) 635-5570 / Fax (858) 635-5771

DATE: **JUL 2 5 2003**                          Clerk, by _____ L. Pettavino _____, Deputy
*(Fecha)*                                   *(Actuano)*                                              *(Delegado)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Standard Insurance Company, a Corporation

   under: ☒ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
              ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
              ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (individual)
              ☐ other:

4. ☐ by personal delivery on *(date)*:

[SEAL]

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) (Rev. January 1, 1984)

*(See reverse for Proof of Service)*
**SUMMONS**

JURISEARCH
www.jurisearch.com

CCP 412.20

Ex. **B**  P. **33**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

STANDARD INSURANCE COMPANY, a Corporation,
BARNEY & BARNEY, a Corporation; and DOES 1 through 10, inclusive

| |
|---|
| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*

JAY GORDON, an individual and SHEILA GORDON, an individual

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court.<br><br>A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.<br><br>If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.<br><br>There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.*<br><br>*Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.*<br><br>*Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosasde su propiedad sin aviso adicional por parte de la corte.*<br><br>*Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

The name and address of the court is: *(El nombre y dirección de la corte es)*

San Diego Superior Court
330 West Broadway
San Diego, CA 92101

CASE NUMBER: *(Número del Caso)*
GIC 814967

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
John W. Tower, Esq., SBN 106425
9747 Business Park Avenue, Suite 201 San Diego, CA  92131        (858) 635-5570 / Fax (858) 635-5771

DATE: JUL 2 5 2003
*(Fecha)*

Clerk, by _____ L. Pettavino, Deputy
*(Actuario)*                                *(Delegado)*

[SEAL]
SUPERIOR COURT · SAN DIEGO COUNTY · CA.

**NOTICE TO THE PERSON SERVED: You are served**

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [X] on behalf of *(specify)*:  Barney & Barney, a Corporation

under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (individual)
       [ ] other:

4. [X] by personal delivery on *(date)*: 8-12-03

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) (Rev. January 1, 1984)

*(See reverse for Proof of Service)*
**SUMMONS**

JURISEARCH
www.jurisearch.com

CCP 412.20

Ex. C P. 34

1 | WARREN H. NELSON, JR.  #104744
A PROFESSIONAL CORPORATION
2 | 6343 El Cajon Boulevard, # 165
San Diego, CA 92115
3 | Telephone:  (619) 269 4212
Facsimile:  (619) 501 7948
4
5 | Attorney for Defendant
STANDARD INSURANCE COMPANY
6
7
8
9 | SUPERIOR COURT OF CALIFORNIA
10 | COUNTY OF SAN DIEGO
11
12 | JAY GORDON, an individual, and ) Case No.: GIC814967
13 | SHEILA GORDON, an individual, )
  | ) DEFENDANT STANDARD INSURANCE
14 | Plaintiffs, ) COMPANY'S GENERAL DENIAL AND
  | ) AFFIRMATIVE DEFENSES
15 | vs. )
  | )
16 | )
STANDARD INSURANCE COMPANY, a )
17 | Corporation, BARNEY & BARNEY, a )
Corporation, and DOES 1 through )
18 | 10, inclusive, )
  | )
19 | Defendants. )
20 | )
  | )
21
22 | Pursuant to Code of Civil Procedure section 431.30(d),
23 | defendant STANDARD INSURANCE COMPANY ("Standard") generally
24 | denies each and every allegation of plaintiffs' unverified
25 | complaint and asserts the following affirmative defenses:
26 | FIRST DEFENSE
27 | 1. The complaint and each claim for relief therein fails to
28 | state a claim upon which relief can be based.

SECOND DEFENSE

2.  Plaintiffs' recovery is limited by the terms and conditions of the applicable plan, policy or policies, including limitations upon and exclusions to coverage.

THIRD DEFENSE

3.  Plaintiffs have waived any right to recovery under the terms and conditions of the applicable plan, policy or policies.

FOURTH DEFENSE

4.   Plaintiffs are estopped from seeking recovery on any Standard plan, policy or policies.

FIFTH DEFENSE

5.   Plaintiffs' recovery is limited by the proportion of their fault for any of the damages requested.

SIXTH DEFENSE

6.   Plaintiffs would receive a windfall and be unjustly enriched by any recovery on any Standard plan, policy or policies.

SEVENTH DEFENSE

7. Plaintiffs' recovery is limited by any failure to mitigate damages.

EIGHTH DEFENSE

8. On information and belief, performance of any duty Standard owes or owed plaintiffs under the plan or policy has been excused by plaintiffs' actions or inactions.

NINTH DEFENSE

9. The Employee Retirement Income Security Act, 29 U.S.C. sections 1001, et seq. ("ERISA") governs all the claims at issue.  Standard has complied with and performed all of its



Ex. D P. 36

promises, obligations and duties to plaintiffs under the plan
and the related policy, and, in particular, with regard to the
handling of plaintiff Sheila Gordon's claim for disability
benefits under the plan and policy.  Standard has thereby
complied fully with the requirements of ERISA.

### TENTH DEFENSE

10.    Any demand for attorney's fees should not be
granted because the claim handling, claim decision and defenses
asserted to this action are reasonable and have been made in
good faith.

### ELEVENTH DEFENSE

11.    Standard's denial of plaintiff Sheila Gordon's
claim was neither arbitrary nor capricious.

### TWELFTH DEFENSE

12.    This action and each claim for relief in it are
barred to the extent that plaintiffs have failed to exhaust
administrative remedies before filing this action.

### THIRTEENTH DEFENSE

13.    To the extent that there has been unreasonable
delay, plaintiffs' complaint is barred by the doctrine of
laches.

### FOURTEENTH DEFENSE

14.    The complaint and each purported claim for relief
or cause of action therein is barred by the applicable statutes
of limitation, including but not limited to Code of Civil
Procedure sections 335, 337, 338, 339, 340 and 343.

--

--

Ex. D  P.37

DEF STANDARD'S GEN DENIAL & AFFIRMATIVE DEFENSES - GIC814967  - 3

## FIFTEENTH DEFENSE

15.    The provisions of ERISA govern all claims at issue.  ERISA preempts and precludes as a matter of law all of plaintiffs' common law causes of action and claims for relief and all of plaintiffs' claims for damages and recovery other than for alleged past due disability benefits and for prejudgment interest, reasonable attorney's fees and costs, were plaintiffs to prevail.

## SIXTEENTH DEFENSE

16.    Plaintiff Jay Gordon lacks standing to sue.

**W H E R E F O R E**, Standard respectfully requests that:

1.    Plaintiffs take nothing by their complaint;

2.    Their complaint be dismissed with prejudice;

3.    Standard recover its costs and attorney's fees against plaintiffs to the fullest extent permitted by law; and,

4.    The Court grant such other and further relief to Standard as in all the circumstances may be just.

Dated:   September 2, 2003

WARREN H. NELSON, JR.
A PROFESSIONAL CORPORATION
6343 El Cajon Boulevard, # 165
San Diego, CA 92115

Attorney for Defendant
STANDARD INSURANCE COMPANY

Ex. D  P. 38

DOCKET No. GIC814967

Jay Gordon, et al.  v. Standard Insurance Company, et al.

PROOF OF SERVICE BY MAIL

I, Warren H. Nelson, Jr., the undersigned, hereby certify and declare under penalty of perjury that I am over the age of 18 years and am not a party to this action. My business address is Warren H. Nelson, Jr., A Professional Corporation, 6343 El Cajon Blvd., # 165, San Diego, CA 92115, telephone (619) 269-4212, facsimile (619) 501-7948.  On the 3rd day of September, 2003, I served a true copy of the foregoing documents titled exactly:

DEFENDANT STANDARD INSURANCE COMPANY'S GENERAL DENIAL AND AFFIRMATIVE DEFENSES

By placing it/them in an addressed sealed envelope with correct postage affixed thereto and personally depositing it/them in the United States mail.  I addressed the envelopes to the following:

Bruno W. Katz, Esq.
Shea McNitt Carter, A Law Corporation
501 W. Broadway, Fifteenth Floor
San Diego, CA 92101-3536

John W. Tower, Esq.
9747 Business Park Avenue
Suite 201
San Diego, CA 92131

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd day of September, 2003, at San Diego, California.

Warren H. Nelson, Jr.

Ex. D  P. 39

DOCKET No. (Unassigned)

<u>Jay Gordon, et al.  v. Standard Insurance Company, et al.</u>

PROOF OF SERVICE BY MAIL

I, Warren H. Nelson, Jr., the undersigned, hereby certify and declare under penalty of perjury that I am over the age of 18 years and am not a party to this action. My business address is Warren H. Nelson, Jr., A Professional Corporation, 6343 El Cajon Blvd., # 165, San Diego, CA 92115, telephone (619) 269-4212, facsimile (619) 501-7948.  On the 3rd day of September, 2003, I served a true copy of the foregoing documents titled exactly:

<u>DEFENDANT STANDARD INSURANCE COMPANY'S NOTICE OF REMOVAL</u>

By placing it/them in an addressed sealed envelope with correct postage affixed thereto and personally depositing it/them in the United States mail.  I addressed the envelopes to the following:

Bruno W. Katz, Esq.
Shea McNitt Carter, A Law Corporation
501 W. Broadway, Fifteenth Floor
San Diego, CA 92101-3536

John W. Tower, Esq.
9747 Business Park Avenue
Suite 201
San Diego, CA 92131

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd day of September, 2003, at San Diego, California.

Warren H. Nelson, Jr.

ATTACHMENT TO CIVIL COVER SHEET:

Attorneys for Defendant Barney & Barney

Bruno W. Katz, #174876
Shea McNitt Carter
A Law Corporation
501 W. Broadway, Fifteenth Floor
San Diego, CA 92101-3536
Telephone:  (619) 232 4261
Facsimile:  (619) 232 4840

```
         UNITED STATES
         DISTRICT COURT
      Southern District of California
           San Diego Division

        # 096900  -  A2
       September 3, 2003

    Code     Case #    Qty    Amount

   CV0869GG 3-03-CV-1765      120.00 CK
      Judge   - HUFF
   CV510000                    30.00 CH


   Total->              150.00


   FROM: GORDON V STANDARD INSURANCE
         CIVIL FILING
         CK  1075
         CHB
```

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**
JAY GORDON, an individual,
SHEILA GORDON, an individual,

**DEFENDANTS** STANDARD INSURANCE COMPANY, a Corporation, BARNEY + BARNEY, a Corporation, and DOES 1 through 10, inclusive

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)

'03 CV 1765 H LSP

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
JOHN W. TOWER, #106425
9747 Business Park Ave, Suite 201
San Diego, CA 92131
Telephone: (858) 635 5570 Fax: (858) 635 5771

**ATTORNEYS (IF KNOWN)** DEFENDANT STANDARD INSURANCE COMPANY (ALSO: See Attachment)
Warren H. Nelson JR. #104744
A Professional Corporation
6343 El Cajon Blvd, #165
San Diego, CA 92115
Telephone: 619 269 4212 FACSIMILE 619 501 7948

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 28 U.S.C. §§ 1331, 1441(b), 1441(c) + 29 U.S.C. § 1003(b) ERISA DISABILITY CLAIM 28: 1441 ed (b)

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| • 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reappointment |
| • 120 Marine | • 310 Airplane | • 362 Personal Injury- Medical Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| • 130 Miller Act | • 315 Airplane Product Liability | | 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | 430 Banks and Banking |
| • 140 Negotiable Instrument | • 320 Assault, Libel & Slander | • 365 Personal Injury - Product Liability | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| • 150 Recovery of Overpayment &Enforcement of Judgment | • 330 Federal Employers' Liability | • 368 Asbestos Personal Injury Product Liability | 640 RR & Truck | 830 Patent | 460 Deportation |
| • 151 Medicare Act | • 340 Marine | **PERSONAL PROPERTY** | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| • 152 Recovery of Defaulted Student Loans (Excl. Veterans) | • 345 Marine Product Liability | • 370 Other Fraud | 660 Occupational Safety/Health | **SOCIAL SECURITY** | 810 Selective Service |
| • 153 Recovery of Overpayment of Veterans Benefits | • 350 Motor Vehicle | • 371 Truth in Lending | 690 Other | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| • 160 Stockholders Suits | • 355 Motor Vehicle Product Liability | • 380 Other Personal Property Damage | **LABOR** | 862 Black Lung (923) | 875 Customer Challenge 12 USC |
| • 190 Other Contract | • 360 Other Personal Injury | • 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| • 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 864 SSID Title XVI | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(g)) | 893 Environmental Matters |
| • 210 Land Condemnation | • 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 894 Energy Allocation Act |
| • 220 Foreclosure | • 442 Employment | | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| • 230 Rent Lease & Ejectment | • 443 Housing/Accommodations | 530 General | [X] 791 Empl. Ret. Inc. Security Act | 871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| • 240 Tort to Land | • 444 Welfare | 535 Death Penalty | | | 950 Constitutionality of State |
| • 245 Tort Product Liability | • 440 Other Civil Rights | 540 Mandamus & Other | | | 890 Other Statutory Actions |
| • 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

- 1 Original Proceeding
- [X] 2 Removal from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multidistrict Litigation
- 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** • CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   **DEMAND $** _____   Check YES only if demanded in complaint: **JURY DEMAND** [X] YES • NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): JUDGE _____ Docket Number _____

DATE September 2, 2003   SIGNATURE OF ATTORNEY OF RECORD _____

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

CB #150 96900 09/03/03